| 46 | 409 |
| 95 | 292 |

| 46 | 409 |
| 122 | 565 |

[No. 3,723.]

## JAMES MALONE v. MARCUS C. HAWLEY AND GEORGE T. HAWLEY.

INJURY TO EMPLOYE FROM NEGLIGENCE OF EMPLOYER.—M., while employed as a sub-porter by H., a merchant, was injured by the falling of a hoisting apparatus. *Held*, that evidence that the apparatus had fallen before from a similar cause was admissible to show knowledge of defect on the part of defendant.

LIABILITY OF EMPLOYER FOR INJURY TO EMPLOYE.—Where an employé was injured by the falling of a hoisting apparatus : *held*, that the liability of the defendant depended upon three facts : 1. That the method of attaching the hoisting rope was defective and unsafe, and that the injury was caused by the defect. 2. That the defendant knew or ought to have known of the defect. 3. That the plaintiff did not know of it, and had not equal means of knowledge.

NEGLIGENCE—RULE FOR ASSESSING DAMAGES.—It is competent for a jury, in assessing damages to an employé resulting from negligence of the employer, to consider what, before the injury, was the health and physical ability of the plaintiff to maintain himself and family, as compared with his condition in such particulars afterwards; his loss of time, and how far the injury was permanent in its character and results, as well as the physical and mental suffering he sustained by reason of the injury; and they should allow such damages as they think will fairly and justly compensate him for all loss and injury sustained. But the jury cannot consider the plaintiff's " condition in life "—whether he is rich or poor.

APPEAL from the District Court, Nineteenth Judicial District, City and County of San Francisco.

CAL. REPS. XLVI—52

This was an action for damages. The plaintiff was employed in March, 1871, as an under porter in the storehouse of the defendants, who were merchants in San Francisco. It was his duty to raise and lower goods from one story to another by means of a hoisting apparatus or " cage " worked by hand. The hook attached to the hoisting rope hooked into a staple on the cage, and mousings were placed on the hook to keep it from unhooking. There was no way of knowing when the cage reached the lower floor except the person working it heard it strike the bottom or saw the rope slack, which it did as soon as the cage struck the floor. When the rope slacked it twisted and was liable to throw the hook out of the staple so that the weight of the cage and whatever was put on it while in that position would rest on the mousings when the cage was raised. On the 10th of October, 1871, while the plaintiff was loading the cage—the rope having twisted the hook out of the staple, the weight of the cage rested upon the mousings and broke them. The cage fell, and the plaintiff, who was pulling on the rope, fell to the lower floor as it slacked, breaking his leg and rendering amputation necessary. He then brought this action, alleging that the apparatus was constructed in an unsafe manner and of unsound materials, and that the facts were known or might have been known to the defendants by the use of ordinary diligence. At the trial evidence was introduced to show that about a year before the plaintiff was employed in the store, the cage had fallen from the same cause as when the plaintiff was injured; that the falling was known to the defendants, but they did not remedy the defect or inform the plaintiff of it. The jury gave the plaintiff a verdict for six thousand five hundred dollars.

The other facts are stated in the opinion.

*Sawyer & Ball,* for Appellant.

The Court erred in permitting, against the objection of appellants, the respondent to prove the cage had fallen before, because it may have fallen from careless handling. (*Martinez* v. *Planel,* 36 Cal. 578.)

The Court erred in its charge, in leaving the amount of damages entirely to the judgment and discretion of the jury, so that it be within the limit asked for in the complaint.

The complaint prays for twenty thousand dollars damages. Damages are of three kinds—compensatory, exemplary, and punative.

Where neither fraud, malice, oppression, nor gross negligence intervenes, compensatory damages can alone be allowed. (Sedgwick on Dam. 38; Sherman and Red. on Neg., Sec. 600; *Wallace* v. *Mayor N. Y. City,* 2 Hilt. 440; *Moody* v. *McDonald,* 4 Cal. 297.)

Where the Court charged the jury that there was no certain rule by which to estimate the damages for the personal injury to the plaintiff, and that the jury will fix them at such sum as they think right and proper under the evidence: held, the instruction was erroneous. It should have been more precise.

Also, where the Court charged the jury: "The question of damages is for you. Should you find it necessary to examine that question, let fair and exact justice be your guide, and your own good sense will determine it"—was clearly wrong. (*Heil* v. *Glading,* 42 Penn. 493; *Penn. R. R. Co.* v. *Zebe,* 33 Penn. 327; *Penn. R. R. Co.* v. *Vandevere,* 36 Penn. 303.)

The instructions should have been as given in *Stockton* v. *Frey,* 4 Gill, at bottom of pages 414 and 422.

*G. W. Tyler*, for Respondent.

The rule of law in cases of this kind is: an employer who provides the machinery, and oversees and controls its operations, must see that it is suitable, *i. e.*, safe; and if an injury to the workmen happen by reason of a defect, unknown to the latter, and which the employer, by the use of ordinary care, could have cured, such employer is liable for the injury. This rule includes two conditions, by which the employé is affected. First—He shall not be ignorant of the defect. Second—He shall not, by his own act, proximately contribute to the injury. (*McGlynn* v. *Brodie*, 31 Cal. 380, *et seq.; Needham* v. *S. F. & S. J. R. R. Co.*, 37 Cal. 409.)

The testimony of a former break was competent to show the knowledge of the defect by the appellants, and their negligence in not making it known to the respondents.

It would be interesting to know in what manner a latent defect in a machine could be shown to exist and be known to a party, not an expert, except by the fact that the defect had revealed itself on other occasions, which were within the knowledge of the party.

It may frequently be very proper, and in some cases absolutely necessary, to look beyond the transaction which is the immediate subject of inquiry, into previous transactions, for the purpose of making a just inference as to the knowledge of the parties, their motives, and intentions. (1 Phillips on Evidence, 3d ed., 461.)

The charge of the Court is not erroneous, although it might have been fuller and more specific. If the general principle applicable to the case, laid down in the charge, is correct, a new trial will not be granted for the want of a more particular direction. (*Selleck* v. *S. H. T. Co.*, 13 Conn. 453; *Barton* v. *Glasgow*, 12 Serg. & R. 149; *People* v. *Moore*, 8 Cal. 94.)

The word "condition" did not apply to a state of case not presented to the jury, and could not have had reference to the moral, social, or pecuniary status of the plaintiff; but it did apply to the case as presented to the jury, by sufficient testimony.

By the Court, BELCHER, J.:

The action was to recover damages for an injury sustained by the plaintiff while working on a hoisting apparatus, called a cage, in the store of the defendants. The plaintiff recovered judgment, and the appeal is from the judgment and from an order denying a motion for new trial. Whether the plaintiff knew of the defect which caused the cage to fall, and whether his carelessness contributed in any way to produce the injury, were questions properly submitted to the jury, and we cannot upon this ground disturb the verdict, based as it was upon conflicting evidence. The testimony that the cage had fallen before was offered to show knowledge on the part of the defendants of the defect which caused it to fall, and was properly received. The liability of the defendants depended upon three facts : First, that the method of attaching the hoisting rope to the cage was defective and unsafe, and the injury was caused to the plaintiff by the defect; second, that the defendants knew, or ought to have known, of the defect; and third, that the plaintiff did not know of it, and had not equal means of knowledge. That the cage had fallen before from a similar cause was an appropriate, if not the only means of proving that the defendants knew it might at any time fall again. The cases cited for the appellants are not in point. In those cases the testimony was offered, not to prove a knowledge of the defect, but the defect itself.

The Court instructed the jury that the damages were left entirely to their judgment and discretion, so that they be

within the limits asked for in the complaint; and that in fixing the amount they were to take into consideration all the circumstances surrounding the case, the nature of the injury, the age of the plaintiff, his condition in life, and so forth.

The jury should have been told that in estimating the damages they might consider what, before the injury complained of, was the health and physical ability of the plaintiff to maintain himself and family, if he had one, as compared with his condition in those particulars afterwards; his loss of time, and how far the injury was permanent in its character and results, as well as the physical and mental suffering he had sustained by reason of the injury, and that they should allow such sum for damages as in their opinion would fairly and justly compensate him for all the loss and injury sustained. This was the extent to which the judgment and discretion of the jury could lawfully go. The instruction, as given, went further than this, and, we think, was calculated to mislead the jury. It in effect told them that they might award the plaintiff any sum within that named in the complaint, which, in their discretion, they should think he ought to receive, without limiting it to a just compensation. Moreover, they were allowed to take into consideration "his condition in life, and so forth." It is not very apparent what was meant by the words "and so forth," and they would seem to be objectionable on that account; but, however this may be, it is clear that by the words "condition in life" was meant, among other things, the plaintiff's pecuniary condition, as rich or poor. In *Shea* v. *Protrero and Bay View Railroad Company*, 44 Cal. 414, the jury were told that they might take into consideration the fact, if it was proven to their satisfaction, that the plaintiff "is a man who has to depend upon his daily labor for a living;" and this was held to be error upon the ground that it made the damages dependent upon the wealth or poverty of

the plaintiff.   "The proposition," said the Court, "cannot be sustained in principle, and is not supported by any authority which we have met."   That case is in point here. The plaintiff's "condition in life" included the proposition that he had to depend upon his manual labor for a living, and more.   If the instruction complained of in that case was erroneous, the instruction given in this case must also be erroneous.

Judgment and order reversed and cause remanded for a new trial.