[S. F. No. 16590. In Bank.—Oct. 17, 1941.]

JAMES P. HICKS, Respondent, v. OCEAN SHORE RAIL-ROAD, INC. (a Corporation), et al., Appellants.

Keyes & Erskine, Anthony S. Devoto, A. P. Black and Isador W. Botasof for Appellants.

Gardiner Johnson for Respondent.

MOORE, J., *pro tem.*—The Industrial Accident Commission having made its award in the sum of $2114.50, which was paid, to plaintiff for injuries sustained by him in the course of his employment by defendants, he subsequently instituted this action for damages. The Labor Code authorizes such an action where the employer fails to carry compensation insurance. After 21 days of trial, the jury returned a verdict in plaintiff's favor in the sum of $15,000. Upon defendants' motion for new trial, the judgment was reduced to $8500 and the motion was denied. To this reduction plaintiff consented. The court also allowed counsel fees in the sum of $1700. From the judgment as modified and from the order denying the motion for a new trial defendants appeal. The latter being nonappealable, the purported appeal therefrom must be dismissed.

On June 30, 1936, while operating a gasoline driven power shovel as an employee of defendants, plaintiff was injured. He was excavating a "V" shaped cut into a steep bank at the North Portal of Pedro Mountain, near Shelter Cove in San Mateo County. His compensation was $8 per day. The excavation was for the purpose of re-opening a tunnel through which the road bed of defendants' railroad had been laid at some time in the past. The hill through which the tunnel passed was about 200 feet high. The distance from the North Portal to the South Portal was about 354 feet. Prior to 1935 both portals had become completely covered by shattered rock which had fallen from the heights above. Extensive blasting had been done in and about the tunnel in 1930. This had displaced the conglomerate earth and rock in the entire general area. The geological formation was substantially the same at both portals and the tendency to slip when the angle of repose exceeded 45 degrees was the same. In such an area construction work was dangerous. The principal hazard characteristic of the structure was its tendency to slip and slide. Blasting displaced the strata and caused loose material to slide for indefinite periods. So great

were the hazards that extraordinary protection would be necessary to effect a reasonable degree of safety to the workmen engaged in the construction.

It was the task of plaintiff so to operate the shovel at the North Portal as to remove the loose earth and rock covering the old entrance. He had progressed with the excavation until he had gone more than 50 feet past the original portal. The shovel bucket had removed some tunnel timbers. As a result of his operations the bank in front of the shovel became at least 75 feet high and sloped at an angle of about 70 degrees. This operation continued to the time of the accident. No effort was made to blast the bank down to its angle of repose which was about 45 degrees.

In March preceding the accident a slide had occurred at the South Portal which almost completely buried the power shovel. The engineer notified the officers of the railroad of that incident. In May a slide of great magnitude at the North Portal displaced the rock and piled it up so high around the power shovel that large rolling boulders crushed into its radiator. Of that slide also defendants had knowledge. Some slides involved major displacements. On other occasions broken rock trickled down the bank. No lookout or watchman was on duty as plaintiff proceeded with his operations to warn him of impending slides or falling rocks. Defendants relied upon the "greaser", or helper of plaintiff to keep on the lookout for such slides and falling rock.

Prior to plaintiff's employment by defendants, he had performed the same labor on behalf of the Adams Construction Company which, under a contract with defendants, had been clearing the rock and dirt from the face of the tunnel on defendants' right of way. The contract with the Adams Construction Company having terminated June 24, 1936, defendants continued the operations in progress at the time.

From the narrative related by plaintiff and believed by the jury, it appears that, while seated in the operator's cab of the power shovel and operating its levers, plaintiff detected some mechanical disturbance. He set his brakes and raised his seat from the passageway in order to visit the engine compartment and adjust the governor. Hearing the slide of rocks above him, he looked out and saw many rocks sliding from the top down the side of the bank. While in that position one of the falling rocks bounded through the

open cab window and struck him on the forehead. Its approach was too sudden to enable him to observe its exact size or the direction from which it came. He was stunned by the force of the blow. He had no memory of any intervening fact until he was conscious of pulling his right hand in a severely crushed condition out of an opening in the cab wall two feet back of the operator's seat and immediately above the drum and feather touch control of the hoisting machinery. During his unconsciousness his hand had fallen into this unguarded opening and upon a large gear wheel which crushed it. There were no witnesses to the accident. Brunner, the greaser, the only person at the North Portal that day other than Hicks, was inside the engine compartment of the shovel in the rear part of the cab. He did not see either what Hicks was doing or the falling of the rocks. Plaintiff was removed 30 miles distant to a hospital in San Francisco where he arrived about an hour after the accident. Shortly thereafter he was removed to another hospital where he underwent an operation on his hand. He remained there 23 days.

The injury to his hand was a severe laceration in his palm which reached about two-thirds of the way around his hand. The bases of the metacarpal bones of the index and little fingers were crushed. The extensor tendon of the little finger was severed as were also the sensory branches of the ulnar nerve in the hand. These injuries were permanent. The right hand was rendered inefficient to the extent of 40 or 50 per cent. Plaintiff was unable thereafter to perform his duties as a power shovel operator or to do other skilled mechanical work.

Before considering the points raised on appeal, it will illuminate our discussion to refer at this point to the principles underlying the obligations of the defendants under circumstances presented by the record before us. Where an employer has failed to secure the payment of compensation by taking out insurance, the employee may exercise the right granted him under the special provisions of the Workmen's Compensation Act (secs. 3706–3709 of the Labor Code) by bringing such action as this after he has received an award from the Industrial Accident Commission. Upon the trial of such action, it is presumed that the employer was negli-

gent and that the injury to the employee was a direct result thereof. The employer in such an action may not defend upon the grounds of contributory negligence, assumed risk, or negligence of a fellow servant. (Labor Code, *supra*.)

. It is admitted (1) that defendants were the employers; (2) that they carried no workmen's compensation insurance; (3) that the injury resulted while respondent was working in the course of his employment.

█ It is not our purpose, and it is not our duty, to evaluate evidence for the purpose of making new findings but merely to ascertain whether there is substantial evidence in support of the judgment. (*Tupman* v. *Haberkern,* 208 Cal. 256 [280 Pac. 970].) The many assignments of error are discussed, each in its turn.

█ The reversal of a judgment upon the ground of asserted perjury cannot be ordered except in those cases where the testimony is such as to shock the moral sense of the court. The testimony must be incredible. Where such testimony is not inherently improbable it is the exclusive province of the jury to determine the truth of the matter in question. (*Crabtree* v. *Western Pacific R. Co.,* 33 Cal. App. (2d) 35 | 90 Pac. (2d) 835] ; *Hosman* v. *Southern Pacific Co.,* 28 Cal. App. (2d) 621 [83 Pac. (2d) 88].)

█ The bases of the claims of perjury center about the conflicting statements of plaintiff. Middleton, an officer of the Ocean Shore Railroad, Inc., testified that while at the emergency hospital one hour after the accident, in describing how the accident occurred, Hicks stated to him that the carburetor had continued to bother him; that he called Brunner, the greaser, to the inside and sent him back to adjust the carburetor; that the trouble continued; that when it popped a couple of times, he left his own seat in order to hasten to Brunner's aid; that his feet suddenly went out from under him by reason of some oil on the floor of the cab; that he threw his arms out to avoid falling and that his right hand accidentally contacted the machinery. This testimony of Middleton was corroborated by Brunner. Hicks' testimony was that he did not remember what he had said at the emergency hospital; that he had been knocked unconscious when struck by the rock; that he did not regain consciousness until three days later. He admitted that he did not report to anyone at the emergency hospital or to his fellow workers that

his injury had been caused by the blow of a rock on his forehead. But in view of his testimony that he was unconscious for three days following the accident, it was not unreasonable for the jury to accept his account detailed from the witness stand instead of the story testified to by Middleton. None of defendants' witnesses testified that oil had been found on the floor of the cab after the accident. But if oil had been discovered on the floor of the cab, its presence would have been attributable to the presumed negligence of defendants. (*Crabtree* v. *Western Pacific R. Co., supra.*) Defendants contend that plaintiff made six conflicting statements at various times. But at no time did he fail to give the substance of the events as recited by him in court.

Extravagant accusations are made by defendants with respect to the testimony of one Clarence H. Moore, a safety engineer for the State Compensation Insurance Fund. It is claimed that ''Moore manufactured his testimony in an endeavor to support Hicks' perjured story''; that his inspection and observations were made while the work was in progress under the Adams Construction Company; that he had no direct information as to facts at the North Portal on the day of the accident; that while he pretended to base his testimony upon his prior reports its substance was contrary to them and that he concealed the fact that he had made certain written reports which were favorable to defendants. But in view of the fact that Moore testified that the North Portal where plaintiff was injured was an unsafe place to work, that testimony cannot be treated as a nullity. There is no such showing made in more than 2000 pages of defendants' briefs as would lead to the conclusion that Moore's testimony was inherently improbable. ■ Even though the testimony of the witness may have been the subject of ''justifiable suspicion'' it is not within the province of an appellate court to substitute findings contrary to those made by the jury. (*Crabtree* v. *Western Pacific R. Co., supra.*) To do so would be a clear usurpation of the jury's exclusive function. (*Hosman* v. *Southern Pacific Co., supra.*) The witness Moore was an engineer and his appraisal of the conditions at the North Portal some three weeks prior to the accident was of substantial evidentiary value. The facts were fully disclosed to the jury so that they were enabled properly to evaluate Moore's testimony. Moreover, all of the issues of

fact were presented to the trial court upon the motion for new trial which was denied. We are not inclined to interfere with its ruling.

Defendants assign as error the ruling of the court in admitting evidence of acts of negligence committed at the South Portal inasmuch as the steam shovel operations of plaintiff were at the North Portal. Before the commencement of the excavation the slope of the material at the North Portal was 34 degrees and at the South Portal 45 degrees. The purpose of receiving evidence of former slides was to show the extent of the peril which existed at the time of the operations by plaintiff and the knowledge of defendants with reference to such conditions. The slide which occurred in March, 1936, buried the dipper and bucket of the shovel. The evidence was received for the limited purpose of proving knowledge on the part of the defendants of the existing perils. That evidence may be introduced for a limited purpose is now definitely established. (10 Cal. Jur., sec. 106, p. 816; Evid., sec. 13; *Smith* v. *Whittier,* 95 Cal. 279 [30 Pac. 529].) Where accidents have occurred under circumstances substantially similar to those surrounding the accident in question and where they tend to serve notice of a dangerous condition, evidence thereof is properly admissible. (*Long* v. *Breuner Co.,* 36 Cal. App. 630 [172 Pac. 1132]; *Malone* v. *Hawley,* 46 Cal. 409; *Gorman* v. *County of Sacramento,* 92 Cal. App. 656 [268 Pac. 1083].) As stated in *McCormick* v. *Great Western Power Co.,* 214 Cal. 658 [8 Pac. (2d) 145, 81 A. L. R. 678], evidence ''of previous accidents, similar in character to the one in question, and not too remote therefrom in place or point of time, is admissible.''

The evidence introduced by plaintiff showed that the earth structure at Pedro Mountain was badly fractured shale, slate, conglomerate and sandstone which is considered unstable ground. The formation is stratified and badly broken, rotten rock. Because of this ''rotten'' condition of the rock, its characteristic tendency is to slip and slide and unless it be sloped from 60 to 45 degrees from horizontal it may not hold in position. ''It is the typical formation along the coast within a mile on either side of Pedro Point.'' The geological formation was substantially the same at both portals.

Thirty days prior to the accident, Safety Engineer Moore advised defendants that it was not advisable to work the

shovel on a bank over 20 feet in height at any time; that it was not safe for a shovel of the capacity operated by plaintiff to be operating against the high bank for the ground would slide out as it had done at the South Portal. Moreover, evidence of the slide at the South Portal could not have been prejudicial for it was shown that a slide had occurred only two months prior to the accident at the North Portal, which filled the pit and covered the caterpillars to the floor of the shovel, and rock had rolled down and caved in the radiator.

Defendants assign as error the giving of six instructions requested by plaintiff. To set them forth here at length would unduly prolong this opinion. Nothing is contained in the challenged instructions of a prejudicial character. When read in connection with the entire charge to the jury, they merely served, in a general way, to follow the provisions of the Labor Code governing this type of action. The court followed the established practice in instructing the jury with reference to the value in general of presumptions. ■ In particular it was appropriate and necessary to advise the jury of the significance of the neglect of defendants to secure the payment of their workmen's compensation in event of injuries and that an injury to an employee was presumed to have resulted from defendants' negligence as provided by sections 3700 et seq. of the Labor Code.

■ Defendants' proposed instruction II was substantially included in the general charge. Hence its rejection was not error. Defendants' instruction XXV was read to the jury. Since it contained the substance of their proposed instructions XXIII and XXIV the refusal of the latter instructions was correct. (*Bellandi* v. *Park Sanitarium Assn.*, 214 Cal. 472 [6 Pac. (2d) 508]; *Cowgill* v. *Rasmussen*, 2 Cal. App. (2d) 279 [37 Pac. (2d) 860].) Where instructions are cumulative or merely amplifications of other instructions, or are argumentative they should not be given. (*Estate of Clark*, 180 Cal. 395 [181 Pac. 639]; *Bellandi* v. *Park Sanitarium Assn.*, *supra.*) A judgment will not be reversed because of the refusal to give cumulative instructions. (*Cowgill* v. *Rasmussen*, *supra.*)

■ Defendants contend that the verdict was unreasonably excessive. For the injuries sustained by plaintiff the amount of the judgment finally entered was not excessive.

Prior to the accident plaintiff's right hand was normal. One year thereafter a scar practically encircled it. It was swollen and the back of the hand was deformed; there was a deformity of the little finger which was held in a moderate amount of flexion. The atrophy of the muscles lessened plaintiff's ability to use his little finger while the index finger was also moderately flexed and turned toward the ulnar side of his hand. The function of his hand was at that time considerably reduced. The metacarpal phalangeal joint was almost rigid and the second joint was held in extension. He was unable to bring his fingers down because two of them were held up. While he gripped 42 pounds with his left hand, in his right hand he gripped only 15 pounds. At the time of the trial in the summer of 1937, his injury had reached the maximum of improvement by natural means. It was a permanent injury and his grasp will always be limited and restricted unless his finger should be amputated and the fractured metacarpal bones removed. If such operation should be performed and the index metacarpal reconstructed so as to make a smooth hand with three fingers, he would still have about 40 per cent permanent disability in that hand. This permanent condition created by the injuries sustained by plaintiff together with the shock, pain and anxiety suffered, to say nothing of the permanent impairment of his earning power are ample to justify the judgment. In evaluating the damages suffered, the jury had the advantage of medical testimony showing that $2,000 would be necessary for future treatment. Also, it was shown that plaintiff had been employed steadily since 20 years of age at wages commencing at $120 per month and increasing to $160 per month during the 11 years he was in the employ of the Associated Oil Company. He left that employment to begin work at the Pedro Mountain at $4 per day and in 5 months' time his wages had been increased to $8 per day, working 6 days per week. In his last position he "gave promise of being a skilled mechanic." Having acquired the capacity and skill to operate a power shovel, he demonstrated an ability to earn as much as $12 per day, the usual wage for such operator. His ability to earn rather than the record of his past earnings was the proper factor in computing the impairment of his future earning power. (*Hosman* v. *Southern Pacific Co., supra*; *Holmes* v. *California Crushed Fruit Co.,* 69 Cal. App. 779

[232 Pac. 178]; *Storrs* v. *Los Angeles Traction Co.*, 134 Cal. 91 [66 Pac. 72].)

The question whether the jury's verdict was excessive was presented to the trial judge who, in the proper exercise of his function reduced the judgment to $8500. ■ An appellate court may not interfere unless the amount of the damages finally allowed is so "outrageously excessive as to suggest, at the first blush, passion or prejudice. . . . " (*Hale* v. *San Bernardino etc. Co.*, 156 Cal. 713 [106 Pac. 83].) The trial of this action required 21 days during which the court was enabled to become familiar with the parties and the witnesses. Arguments for a new trial were conducted on two separate occasions and extensive briefs were submitted. The order of the trial judge in modifying the judgment and in denying the motion was not an arbitrary or casual decision. It was a deliberate determination advisedly made. ■ In view of the injuries sustained, the pain suffered and the permanent impairment of earning power, as well as the painstaking effort of the trial court upon a consideration of the motion for new trial and its reduction of the amount, we cannot hold that the judgment is excessive. (*Mudrick* v. *Market St. Ry. Co.*, 11 Cal. (2d) 724 [81 Pac. (2d) 950, 118 A. L. R. 533]; *De Luca* v. *Red Salmon Canning Co.*, 2 Cal. App. (2d) 124 [37 Pac. (2d) 704].)

■ As one of the bases for their contention that the damages were excessive, defendants contend that plaintiff did nothing to minimize his injuries but did everything possible to aggravate them and thereby prevented a complete recovery. In support of this contention they cite parts of the evidence to show that plaintiff was unreasonable in neglecting to perform light work and refusing to submit to medical and surgical treatment. This, they contend, is the sole and proximate cause of his continued physical disability. This contention presents another conflict of testimony. Proof was offered on behalf of plaintiff to the effect that instead of causing a setback, his delay in doing work and in having medical and surgical treatment was proper to allow for the maximum natural recovery and that it was not advisable for a man with the type of deformity suffered by him to engage in even light work; that such work would have been calcu-

lated to cause the deformity to become greater in view of the fact that the metacarpal bones had not firmly united.

Defendants assign as error the refusal of the court to allow them to show that plaintiff's injuries could have been avoided by disengaging the clutch. The ruling of the court was correct. Under section 3708, *supra,* negligence of the employer is presumed and contributory negligence is not a defense. *Spivok* v. *Independent Sash & Door Co.,* 173 Cal. 438 [160 Pac. 565], is distinguishable. There an adequate stairway had been provided for the employee to walk on but he chose a hazardous place to walk.

Defendants assign as prejudicial error certain rulings of the court in admitting evidence offered by plaintiff and in refusing certain proof offered by defendants. In our opinion the rulings complained of could not have constituted prejudicial error. The facts with reference to the manner in which the injuries were received and the extent of the injuries were fully covered by witnesses who testified on behalf of both parties. Although in some of the instances mentioned the court might have erred technically, upon a review of the whole case we are satisfied that the ruling in none of the several instances could have had a substantial effect upon the verdict of the jury. To illustrate: The proof elicited from plaintiff was offered solely for the purpose of proving that on each of the examinations made by Dr. Bunnell he took measurements of each finger and gave the degree of angulation and extent of the shortening. Plaintiff was competent to testify as to those facts, contradicting the testimony of a physician who had testified for defendants.

The photographs in question were properly admissible to show the extent to which the rocks slid down at the South Portal and buried a dipper and bucket. Other witnesses had testified that the character of the formation in the entire hill was identical. From this it was a fair inference that digging into the North Portal would probably create a similar catastrophe of which defendants had notice by reason of their knowledge of the terrain. The photographs were competent proof of the hazardous nature of the formation at both portals.

The proof of the presence or absence of shatter-proof glass was immaterial for the reason that the defendants were presumed to have been negligent and the window was open.

If Dr. Claussen had testified "that if there had been a history given of a concussion, he would have entered it," it would have been a conclusion and improper.

The court correctly denied defendants' offer to prove that the neglect of the Ocean Shore Railroad, Inc., to carry compensation insurance was not deliberate. While the court may reduce a statutory penalty exacted by the state for the failure of a violator to appreciate his obligation to the commonwealth, there is no authority for excusing any employer for his failure to comply with legal requirements for the care of his employees. When the operations began on the morning of June 30, the defendants knew that they carried no compensation insurance. Whether they carried insurance might have been a matter of their own concern but when they conducted operations through the agency of their employees, they did so at their own peril if they carried no compensation insurance. The present wish of defendants that they had taken out compensation insurance and their claim that they would have done so were immaterial. (*Soria* v. *Cowell Portland Cement Co.*, 99 Cal. App. 108 [277 Pac. 1061].)

To none of the hypothetical questions propounded was objection made. We are directed to no specific conduct of plaintiff's counsel that would justify the claim that he had distorted the testimony of the witness Kent. Neither have we discovered evidence of any such effort.

Defendants assign a portion of the opening statement and a portion of the closing argument of plaintiff's counsel as prejudicial errors. With respect to the opening statement, no assignment of error and no motion to strike and to instruct the jury not to consider it was made at the time. In the absence thereof defendants' contention is in vain. (*Estate of Albertson*, 31 Cal. App. (2d) 211 [87 Pac. (2d) 883]; *Gillette* v. *San Francisco*, 41 Cal. App. (2d) 758, 763 [107 Pac. (2d) 627].) For the same reason the assignment of a portion of the closing argument of plaintiff's counsel will not be considered.

Contrary to defendants' contention, their payment of the commission's award to plaintiff prior to this action did not deprive the superior court of jurisdiction of the action. Such a contention was disposed of in *Coffin* v. *Bloodworth*, 28 Cal. App. (2d) 522 [82 Pac. (2d) 953], where an identical claim was made. It was there held that the pay-

ment in full of the award of the Industrial Accident Commission did not deprive the superior court of jurisdiction conferred upon it by statute, the court declaring that ''The phrase *'secure the payment of compensation'* has reference to the time before a contingency arises that requires the payment of such compensation and not, as contended by appellants, the actual payment thereof.''

Finally defendants assign as error the order of the court in denying their motion for a new trial. While such an order is not appealable, we may appropriately review the proceedings on the motion in connection with the appeal from the judgment. At this point some of the orders made will be clarified by a statement of them as they occurred. Verdict was returned September 21, 1937, in the sum of $15,000. On September 30, defendants prematurely filed their notice of intention to move for a new trial. On October 7 the parties stipulated that the oral motion of defendants for a judgment in their favor notwithstanding the verdict and plaintiff's motion for counsel fees might be argued October 21. At some time subsequent to that stipulation, arguments were made and on November 20 judgment was entered on the verdict. On November 26 the order was signed and filed by the judge purportedly modifying the judgment by deducting $5,000 therefrom with plaintiff's consent. Such consent was filed and on December 28 the court entered judgment in the sum of $10,000 and $1700 attorney's fees. Thereafter defendants on December 11 filed a second and timely notice of intention to move for a new trial and the court made an order extending time to prepare, serve and file affidavits in support thereof. In January and February, 1938, defendants filed certain affidavits in support of their motion for a new trial. On February 9, following the hearing on the motion the court modified the judgment by deducting $6500 from the amount of the verdict, leaving a judgment for $8500 and $1700 attorney fees.

From these facts it appears that, upon the record, the judge was of the opinion that the verdict should be reduced in the amount of $5,000; also that, after hearing the last arguments and considering the affidavits in support of the motion, he concluded to reduce the judgment in the further sum of $1500.

The greater portion of the evidence presented by the affidavits deals with facts in connection with plaintiff's operations. The outstanding claim relates to the alleged dishonesty of plaintiff concerning his age as presented in the affidavit of defendant Middleton. The merits of plaintiff and his cause had been the subject of a number of hearings during the 12 months prior to the trial of this action. By the exercise of reasonable diligence and by the use of the information gained defendants could have presented documentary or primary proof of their claims if they existed. At the trial it was stipulated by all parties that on July 10, 1924, plaintiff was 20 years of age. There was not the slightest proof contrary to that stipulation developed during the trial. After argument had been made and because of the premature filing of the notice of intention, the affidavit of Middleton was filed. It contains no substantial proof of the contentions made. The only document presented was the application of "Jack P. Hicks" for a marriage license made August 5, 1920, when the applicant represented himself as 22 years of age. While we have only an inference that plaintiff was the person described in the application for the license, apparently the trial judge, in fear that injustice might result, made the further reduction of $1500 in the judgment based upon plaintiff's life expectancy at the age of 32 years, as established by his testimony instead of his expectancy at 38 years, if based upon the data contained in the application for the marriage license. In the absence of prejudicial error in the conduct of the trial, the court's order was practical and operated for substantial justice.

■■ Questions raised upon motions for new trial are primarily addressed to the sound discretion of the trial court. (*Coffin* v. *Bloodworth, supra.*) There is nothing in the affidavits filed by defendants that places them beyond the rule laid down in the cited authority. Newly discovered evidence is regarded with suspicion and disfavor. (*Arnold* v. *Skaggs,* 35 Cal. 684.) Under this rule the court's conduct in denying a motion for a new trial would not have been arbitrary had he made no further reduction on account of the averments in the affidavits of MacGraw and Middleton and others. ■■ The Middleton affidavit, not having been filed within the statutory period (Code of Civil Procedure, sec. 659a) or any

extension thereof, does not properly constitute a part of the record.

· The purported appeal from the order denying the motion for a new trial is dismissed.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., and Pullen, J., *pro tem.*, concurred.

Appellants' petition for a rehearing was denied November 13, 1941.