[Civ. No. 17007. Second Dist., Div. Three. Mar. 2, 1950.]

LESLIE M. STILL, Plaintiff and Appellant, v. ROBERT C. PEARSON, Defendant and Appellant.

Irwin W. Rainer and Stanton & Stanton for Plaintiff and Appellant.

Zeutzius & Steffes for Defendant and Appellant.

WOOD, J.—Action by an employee against his employer, who did not have compensation insurance, for damages for personal injuries sustained in the course of his employment. In a trial by jury, wherein Judge Frank M. Smith presided, the plaintiff obtained judgment for $8,000. Defendant's motion for a new trial was granted by Judge Clarence M. Hanson, and the plaintiff appeals from the order granting that motion. Defendant appeals from the judgment.

Plaintiff, as appellant in the appeal from the order granting the motion for a new trial, contends that it was error for Judge Hanson to hear and determine the motion for a new trial inasmuch as the record does not show that Judge Smith was unable to hear the motion or that he was absent from the county at the time noticed for the hearing. Section 661 of the Code of Civil Procedure provides: ''The motion for a new trial shall be heard and determined by the judge who presided at the trial; provided, however, that in case of the inability of such judge or if at the time noticed for hearing thereon he is absent from the county where the trial was had, the same shall be heard and determined by any other judge of the same court.'' The motion for a new trial came on for hearing on July 27, 1948, before Judge Hanson, and on said day the motion was submitted. On July 30, 1948, a minute order was made which recited that the motion ''is granted on account of insufficiency of the evidence to justify the verdict, and error in instructing the jury.'' An ''Order Granting a New Trial'' signed by Judge Hanson was filed on August 6, 1948 (and entered on August 23, 1948), which order states that the motion of defendant for a new trial is granted on the grounds of the insufficiency of the evidence to justify or sustain the verdict, and error in instructing the jury. It does not appear that the plaintiff objected to the hearing of the motion for a new trial by Judge Hanson. In plaintiff's opening brief on this appeal the plaintiff raised the point that the record did not show inability or such absence on the part of Judge Smith. Upon application of the defendant for leave to produce additional evidence concerning the in-

ability of Judge Smith to hear and determine the motion for a new trial, this court made an order on October 6, 1949, that additional evidence be taken as to whether Judge Smith was able (at the time noticed for the hearing) to hear and determine the motion; and this court appointed Superior Judge Julius V. Patrosso referee to take evidence upon said issue and to report his findings to this court. The report of Judge Patrosso as referee, filed herein on November 9, 1949, shows that the referee found that Judge Smith ''was on July 27, 1948, and during the period from June 8, 1948 to September 22, 1948, ill and unable to determine respondent's motion for a new trial.'' This court approves the report of the referee, and it adopts the findings therein and makes them the findings of this court. Appellant does not assert that Judge Smith was able to hear the motion, but, as above stated, asserts that the record does not show that he was unable to hear the motion. Appellant argues that ''undoubtedly it is mandatory that the record must show in the words of the section [Code Civ. Proc., § 661] the basis of the jurisdiction of a judge other than the trial judge'' to determine a motion for a new trial. The argument of appellant is to the effect that since the record of the superior court does not show that Judge Smith was unable to hear the motion, the acts of Judge Hanson in connection with the motion were ineffectual, and that by reason of the lapse of time the motion for a new trial was denied by operation of law. The provision of said section that ''The motion for a new trial shall be heard and determined by the judge who presided at the trial'' is mandatory (*Francis* v. *Superior Court*, 3 Cal.2d 19, 29 [43 P.2d 300]), but there are two exceptions to that requirement, namely the inability of the judge who presided at the trial, or his absence from the county. As above shown, the said section 661 of the Code of Civil Procedure provides ''that in case of the inability'' of the judge who presided at the trial, the motion for a new trial ''shall be heard and determined by any other judge of the same court.'' That section does not provide that the minutes or any other record must recite the fact of such inability of the judge who presided at the trial. It is not mandatory that the record show that the judge who presided at the trial is unable to hear and determine the motion for a new trial. Whether a judge who did not preside at the trial is authorized to hear and determine a motion for a new trial is dependent upon whether it is a fact that the judge who presided at the trial was unable to hear and determine the motion or was

absent from the county at the time noticed for the hearing of the motion; and such authorization is not dependent upon whether a minute entry, or other record of the trial court, recites the fact of such inability or absence. Of course, when a judge other than the one who presided at the trial proceeds to hear the motion for a new trial, it is the best practice, in the interests of certainty and convenience, to cause a record to be made reciting the fact of the inability or absence of the judge who presided at the trial. The fact is, in the present case, that Judge Smith, who presided at the trial, was unable to hear and determine the motion for a new trial. Judge Hanson was authorized to hear and determine the motion for a new trial.

Defendant, a building contractor, hired plaintiff, a carpenter, to make certain alterations on premises owned by a person who is not a party to this action. Plaintiff was then approximately 56 years of age and had been a carpenter more than 40 years. The last 11 years he had been a carpenter foreman or supervisor. The alteration work included: enclosing a brick fireplace with knotty pine; building a panel in the fireplace; changing doors in the house; and building an addition to the garage. Before plaintiff started the work defendant went to the premises with him and showed him what was to be done. He also told plaintiff that in building the addition to the garage to use "the old material which was on the place, as far as possible." Plaintiff commenced the work about December 1, 1946. The alterations in the house were made first and, in doing some of the work there, he used two wood sawhorses which he found on the premises. He did not know to whom the sawhorses belonged, but he "checked" them before using them. After completing the alterations inside the house, which required about a week, plaintiff commenced the construction of the addition to the garage, which addition was to have walls, a cement floor, and a shingle roof. He made an excavation where the addition was to be built. He then made the cement floor, and after working five days on said addition he had it near completion. On December 14, 1946, the day of the accident, plaintiff was placing tar paper and stucco wire on the outside of the addition. He began work at 8 a. m. and was assisted by a truck driver who had been hired by defendant, as a helper for plaintiff, for that day only. The walls of the addition were approximately 9 feet in height, and the front wall was 10 feet in length. In order to put the tar paper and stucco wire on the walls

plaintiff and his helper made a scaffold with the two sawhorses (which he had used in the house) and a plank (6 feet long, 10 inches wide and 2 inches thick) which he found on the premises. They did not make the scaffold in the manner in which a sawhorse scaffold is usually made—by placing each sawhorse at a right angle to the wall (or approximately at such an angle) and then placing the plank on them so that it would extend from one sawhorse to the other sawhorse. On the contrary, they placed the sawhorses in a position parallel with the wall, and then placed the plank on them so that one end of the plank was on the end of one sawhorse and the other end of the plank was on the end of the other sawhorse. In other words, the tops (or backs) of the sawhorses and the plank (which together formed the top of the scaffold) were parallel with the wall. By using the scaffold, which was constructed in this manner, they put the tar paper on the walls of the addition, and they put the stucco wire on the back wall. Then, in proceeding to put the stucco wire on the front wall, they moved the scaffold to the front wall and set it up in the same manner. According to the testimony of plaintiff, the scaffold was constructed in this manner so that its length would be approximately the length of the 10-foot front wall—each sawhorse being about 3 feet in length and the plank being 6 feet in length. If the scaffold had been made in the customary manner, by placing the sawhorses crosswise to the wall instead of lengthwise with it, the scaffold would not have been 10 feet long but would have been 6 feet long, the length of the plank. In the scaffold at the front wall one sawhorse was at one end of the wall and the other sawhorse was at the other end of the wall, and there was a 3-foot space between the inside ends of the sawhorses. The plank extended across the 3-foot space—with approximately 18 inches of one end of the plank resting on one sawhorse and about 18 inches of the other end of it resting on the other sawhorse. Apparently the top or back of each sawhorse was about 6 inches wide. The ground in front of the wall was soft. Plaintiff and his helper then used the scaffold about an hour, and during that time they got on and off the scaffold. About 11:30 a. m., while they were tacking a strip of wire along the top of the wall, the defendant "came up" to the place where they were working and stood about 15 feet behind them. The helper then "jumped off" the scaffold to talk with defendant, and plaintiff, who was standing approximately in the middle of the plank, continued to tack the wire on the wall. About two

minutes later, while plaintiff was still standing in the middle of the plank, with his arms upraised holding the wire, one end of the plank went down and one end "flew up," striking plaintiff over his left eye and causing the injuries here involved.

Plaintiff testified that he did not remember checking to see if the plank was on the sawhorses properly before getting on it; two legs of one sawhorse were on a concrete landing which plaintiff had made outside a door in the front wall, and the landing might have been a little higher than the ground around it; while working on the scaffold he felt the plank wiggling and he "noticed that the horse [referring to the one with two legs on the concrete landing] wasn't solid all the time" he was working on top of it; he had felt that it was "wiggly" but he continued working; and the next thing he knew the end of the plank, which had rested on that sawhorse, was going down. He also testified that there were "1 x 6" braces underneath the sawhorses; the piece of wood which formed the tops of the sawhorses was about "2 x 6"; the plank which they used in making the scaffold was somewhat wider than the tops of the sawhorses; he looked for a longer board but they had used up practically everything that was around there, and they had no plank long enough to reach the entire length of the front wall so he put the sawhorses parallel with the wall and placed the plank from one sawhorse to the other. He testified further that he had been working with sawhorses for more than 40 years; when he worked as a carpenter foreman or supervisor most of the work "was high work," and it was a part of his duties to see whether the conditions under which the men worked on high places were safe; and that when he had inexperienced men working he "watched" that they did the right thing.

An expert witness called on behalf of plaintiff testified that when wooden sawhorses are used as a scaffold it is the custom in the contracting business to set them "cross ways" or "perpendicular" to the building; that he knew of no custom or trade practice in which planks could be used end to end, and he had never seen them used that way; that it is not the proper practice to put a plank lengthwise on sawhorses; that a 2 x 10 plank 6 feet long would be strong; and that a reasonably safe span between sawhorses would be "somewhere" between 6 and 10 feet.

Defendant did not carry workmen's compensation insurance and was not self-insured. Section 3700 of the Labor Code provides that "Every employer . . . shall secure the payment

of compensation in one or more of the following ways: (a) By being insured against liability to pay compensation. . . . (b) By securing from the commission a certificate of consent to self-insure. . . .'' When an employer fails to secure the payment of compensation, as required by said section, an injured employee ''may proceed against such employer by filing an application for compensation with the commission, and, in addition, may bring an action at law against such employer for damages.'' (Lab. Code, § 3706.) Pursuant to the provisions of that section plaintiff filed this action for damages.

It was alleged in the complaint that on December 14, 1946, plaintiff was in the employ of the defendant and was engaged, as directed by defendant, in certain carpenter work; that defendant was present and was acting as supervisor and foreman; that to accomplish the task assigned by defendant, plaintiff and another employee of defendant were obliged to stand on certain wooden sawhorses and planks placed thereon; that defendant negligently provided, and ''obliged'' plaintiff to use unsafe, defective and insecure wooden sawhorses and planks which had become slippery with age and wear, and also that defendant provided a fellow servant who was negligent and who was not qualified to engage upon the task assigned; that for want of due care, while plaintiff was standing upon said sawhorses and plank in the act of placing certain wires upon said wall, the said plank ''by reason of the unsafeness, defectiveness and insecurity thereof and, or by reason of the negligent, careless and unskillful acts of the fellow servant furnished to plaintiff by defendant, did fly up and strike plaintiff in the left eye thereby causing extreme, severe and permanent injury.'' It was further alleged therein, paragraph VII, ''That by reason of the negligence and carelessness of defendant, plaintiff was not only painfully and seriously bruised and wounded, but was permanently injured.''

Section 3708 of the Labor Code provides that, in an action at law against the employer for damages, ''it is presumed that the injury to the employee was a direct result and grew out of the negligence of the employer, and the burden of proof is upon the employer, to rebut the presumption of negligence. It is not a defense to the employer that the employee was guilty of contributory negligence, or assumed the risk of the hazard complained of, or that the injury was caused by the negligence of a fellow servant. No contract or regulation

shall restore to the employer any of the foregoing defenses.''

■ Plaintiff (appellant) contends in effect that the court, in ruling upon the motion for a new trial, did not give plaintiff the benefit of said presumption of negligence on the part of the employer. It seems that said contention is based upon statements of the trial judge, in his written opinion, to the effect that since the employee (plaintiff) had alleged specific acts of negligence only, the issues in the case were thereby narrowed to those specific acts; that the charging of specific acts of negligence was equivalent to stating that there were no other acts of negligence; and that the evidence did not support the allegation of specific acts of negligence. It is to be noted, however, that the trial judge also stated in the opinion that ''the employee was not entitled to recover if the presumption of negligence accorded by the statute to these alleged specific acts was overcome by the evidence of the defendant''; and that ''The record clearly discloses that the plank slipped from the saw horse and that it did so due to the manner in which the saw horse had been placed by the plaintiff and to the use he was making of it. There is nothing in the record to indicate that at the time the saw horses were defective, or defective to the extent that such defect was a proximate cause of the accident.'' It therefore appears that the trial judge gave the plaintiff the benefit of the presumption of negligence on the part of defendant as to the specific acts alleged, but concluded that the presumption was overcome by the evidence. ■ Plaintiff argues further that the court erroneously construed the pleadings to allege specific negligence only. He asserts that general negligence was alleged in paragraph VII of the complaint (above quoted). In that paragraph, which followed the allegation of specific acts of negligence, it was alleged in substance that by reason of the negligence of defendant plaintiff was not only painfully wounded but was permanently injured. The question therefore arises as to whether the allegation of that paragraph pertains to negligence other than the specific acts of negligence which had just been alleged, or whether that was only an allegation that the specific acts of negligence alleged caused a permanent injury. Upon the appeal from the order granting defendant's motion for a new trial it is not necessary to decide that question. One of the grounds upon which the motion was granted was the insufficiency of evidence to sustain the verdict. The granting of a motion for a new trial on that ground ''rests within the discretion of the trial judge to such an extent that

an appellate court will not interfere unless an abuse of discretion clearly appears." (*Ballard* v. *Pacific Greyhound Lines*, 28 Cal.2d 357, 358 [170 P.2d 465].) All presumptions are in favor of the order granting the motion. In the case of *Sweeley* v. *Leake*, 87 Cal.App.2d 636 [197 P.2d 401], it was said at page 640 that the trial court in hearing a motion for a new trial "must weigh all the evidence and determine the just conclusions to be drawn therefrom, and its ruling will not be disturbed on appeal where there is a conflict in the evidence or where there is substantial evidence which would support a judgment in favor of the moving party. [Citing cases.] The fact that the motion in the instant case was heard and determined by a judge other than the one who presided at the trial does not extend the power of this court in reviewing the matter. The judge hearing the motion stands in the shoes of the former judge and has the same power and is charged with the same duty as if the motion had come before the former judge."

In the present case the trial judge, in determining the motion for a new trial, might reasonably have concluded that the evidence overcame the presumption of negligence on the part of defendant. Plaintiff examined the sawhorses when he first used them in making the alterations in the house, and he used them over a period of two weeks prior to the accident. There was no evidence that they were defective. Also there was no evidence that the plank was defective. It appears that plaintiff, although he had had many years of experience in the use of sawhorses, did not follow the customary method of making a sawhorse scaffold, namely, placing each sawhorse at a right angle to the wall, but on the contrary he placed them parallel to the wall, which was an improper position for their use as part of a scaffold. The plaintiff knew that the ground in front of the wall was soft. He placed two legs of one sawhorse on the concrete landing (which landing might have been a little higher than the ground) and the other two legs on the soft ground. He noticed, while he was on the scaffold, that the sawhorse was not firm, and that the plank was wiggly. The trial judge did not abuse his discretion in granting the motion for a new trial.

In view of our conclusion that the order granting a new trial must be affirmed, the defendant's appeal from the judgment is moot and is dismissed. The order granting the motion for a new trial is affirmed.

Shinn, P. J., and Vallée, J., concurred.