[Civ. No. 19568. First Dist., Div. One. Mar. 8, 1962.]

COLEY HALL, Plaintiff and Appellant, v. SHIRL M. BURTON et al., Defendants and Respondents.

Malcolm K. Campbell for Plaintiff and Appellant.

Volney J. Tidball for Defendants and Respondents.

SULLIVAN, J.—This is an action by an injured employee to recover from his employers, who failed to secure the payment of workmen's compensation, damages for personal injuries arising out of and in the course of his employment. From a judgment in favor of defendants, after a nonjury trial, plaintiff appeals.

The plaintiff, a roofer, was employed by the defendants in their roofing business. On April 3, 1957, the plaintiff and two other employees were working for defendants on a job in Gilroy, resurfacing a roof with asphalt and gravel. These materials were lifted to the roof by a rope; the asphalt by

hand, and the gravel by means of a gasoline powered hoist machine. In the course of this work, plaintiff was assigned the duty of loading buckets with gravel on a truck; Crabtree, the other employee, was on the roof, taking the buckets off the hoist; Randolph, the foreman, who directed the job, was operating the hoist. Shortly before the occurrence of the accident which is involved in this case, Cluff, one of the partners arrived on the job and replaced Randolph at the hoist.

With Cluff operating the hoist, five or six buckets of gravel had been hoisted to the roof, when the belt of the hoist came off its pulley. The function of the belt was to connect the engine with the drum on which the hoisting rope was coiled in the lifting operation and from which it was uncoiled in the lowering operation. A lever engaged the belt with a pulley connected with the engine. When the belt came off, according to Cluff, it went "down the side" and "was just lying there" underneath a metal covering or guard which extended up on the side of the machine from the engine to the drum, over and along the path of the belt. Cluff leaned over and took hold of the belt to see what happened. Plaintiff jumped down from the truck where he had been filling the buckets with gravel, warned Cluff to be careful that Cluff did not get his finger caught, and slipped the belt back on the pulley, while the engine was running. As he did so, one of the other men warned the plaintiff to turn the engine off.

The hoisting of buckets was resumed and three or four more had been pulled up to the roof, when the belt came off again. Again the plaintiff jumped off the truck and put the belt back on while the engine was running. Cluff, whose attention had been diverted and who actually did not see the happening of the accident, at this point heard a thud, turned his head and saw blood on plaintiff's finger. Plaintiff, himself, testified that he injured his finger on the job, but did not particularize as to how it became injured. The theory adopted by plaintiff below, and also urged before us, seems to have been that while pulling his hand away from the belt on the second occasion, the plaintiff in some way struck the guard or covering over the belt. Randolph, the foreman, and Crabtree, the man on the roof both testified that they did not see the accident happen, but saw the plaintiff's injured finger afterward. Randolph heard someone say "kill the motor." When he met the plaintiff after the accident he asked the latter why he had not killed the motor. We find no evidence in the record that plaintiff's finger was injured by the belt.

Plaintiff bandaged his finger, but remained on the job another two hours or so, until the end of the day. He then received first aid from a doctor in the vicinity and after that further medical attention from a San Jose hospital. He testified that as a result of the accident his left index finger had an inch and a half long cut on it and the finger had been cut to the bone. As a result he lost two days' work. The plaintiff testified to the various treatments received for his finger, the disabling character of the injury in reference to his work as a roofer, and the condition of his finger at the time of the trial. Expert opinion medical evidence was also introduced by the plaintiff.

On his case in chief, plaintiff, apparently relying upon the presumption of negligence established in his favor by section 3708 of the Labor Code, testified to the simple fact that he had injured his finger while on the job, without detailing the particular manner in which the injury had occurred. At the conclusion of this testimony, after plaintiff had been called as a witness by the defendants under the provisions of section 2055 of the Code of Civil Procedure, he testified that the hoist machine was inadequate because the belt had stretched on the machine and kept jumping off. He also stated that the machine was hard to start. He then stated that the belt had stretched—''either that or the idler was warped or wasn't put on right or something.'' But he also admitted that he saw ''nothing bent about the idler.'' To the best of his knowledge, the machine was a new one. Plaintiff had never used it before the day of the accident. In rebuttal, he testified that the belt had come off the pulley at least six times during the day of the accident and that to his knowledge, he was the only person who had put it back on.

According to the testimony of the defendant Cluff, one of the partners in the roofing company, the hoist and all of its component parts, including the belt and the pulleys, had been purchased new about a week prior to the accident. It had been used by the defendants on only one other job. So far as he knew, there had been no trouble with it on the other job. He also testified that the day of the accident was the first time he saw the machine running, that he himself had never tested it, and that no changes were made in the machine after the accident.

The defendant Burton, the other partner, testified that he was present on the previous job when the machine was used; that he had no trouble with the belt jumping off; that he

still had the machine, was still using it without adjustment or changes, and had had no trouble with the machine since the date of the accident. The machine had been bought new for $395. Its "rate of capacity was 500 pounds." The filled buckets of gravel which were hoisted on the day in question weighed about 60 pounds.

Frank Crabtree, the other employee on the job, testified that the belt had jumped off the pulley "about at least three times . . . two or three times" on the Gilroy job and had jumped off twice on a previous job that morning. According to Crabtree, the workmen had some trouble in starting the gasoline engine and keeping it running, but it was all right after it warmed up. Crabtree did not know, either from experience or his own observation, what was making the belt jump off the pulley. On recross-examination he testified that during an interview with plaintiff's counsel, he had stated that the belt was out of line, but he denied making any statement at the interview to the effect that the idler on the hoist was bent. On redirect examination Crabtree explained that his statement to plaintiff's counsel at the interview was merely his idea as to why the belt jumped off, and was not the result of any inspection made by him. His testimony on both recross and redirect examination was in substance that the belt jumped off because it was stretched and the two pulleys were out of line. He stated, however, that this was his opinion based on experience and was not a conclusion reached by inspection of the hoist.

Randolph, the foreman, was the only one running the hoist before the defendant Cluff arrived at the job. He testified that he had no trouble either with the hoist or the engine. He was not at the hoist when the belt came off and did not see the plaintiff replace it. He denied straightening the idler. He did not see Cluff having any trouble with the hoist. He denied that he fixed the idler after the accident or that he told the plaintiff that he did so. In rebuttal, the plaintiff testified that Randolph had fixed the idler. According to the plaintiff, "Well, he told me that he seen where I hit my hand on the guard, where I had cut my finger on the guard, and that he had fixed the idler and fixed the machine."

Plaintiff instituted proceedings before the Industrial Accident Commission and received an award of $1,353.64, which was thereafter paid.

The present action was brought pursuant to section

3706 of the Labor Code.[1] The complaint alleged that the plaintiff was employed by the defendants; that the defendants failed to secure payment of workmen's compensation; that on the day in question "plaintiff was operating a power hoist"; that "the defendants . . . negligently furnished plaintiff this certain power hoist which was unsafe and defective with which to perform his aforesaid employment"; that as a proximate result of said negligence, "the Plaintiff in operating said power hoist and endeavoring to keep said hoist in operation" was injured and sustained other special damages. Defendants, in their first amended answer, filed pursuant to leave granted in the pretrial conference order, admitted being engaged in the roofing business and owning the hoist, but denied that they negligently furnished an unsafe or defective hoist or that plaintiff was injured by reason of any negligence of the defendants. The amended answer also pleaded affirmative defenses of contributory negligence and assumption of risk.[2]

The trial court found that the plaintiff was employed by the defendants at the time of the accident; that the defendants had no workmen's compensation insurance coverage as required by law; that the plaintiff, as an employee of defendants sustained injuries to the index finger of his left hand, and suffered damages; "that it is not true that defendants were negligent in any way toward plaintiff, it being specifically found that defendants in no manner were negligent in their duties to plaintiff; that it is not true that plaintiff suffered any damages, as a proximate result of negligence of defendants." The court concluded "that defendants sustained the burden of overcoming the presumption of negligence on their part in this case." Judgment was rendered accordingly.

The plaintiff contends that (1) "the evidence is insufficient to support the judgment" since defendants failed to produce sufficient evidence to rebut the presumption of the employers' negligence; (2) the trial court misconceived the issues; and (3) the trial court committed prejudicial error in refusing

---

[1]Labor Code, § 3706 provides: "If any employer fails to secure the payment of compensation, any injured employee or his dependents may proceed against such employer by filing an application for compensation with the commission, and, in addition, may bring an action at law against such employer for damages, as if this division did not apply."

[2]Although these defenses cannot be invoked under Labor Code, § 3708, defendants' theory was that they were proper defenses where the employee was not acting within the scope of his duties.

to view the defendants' hoist in the company of plaintiff's attorney.

■ Before discussing the above contentions we will first set forth the legal principles governing the action before us. Where an employer within the scope and subject to the operation of the workmen's compensation law fails to secure the payment of compensation, any injured employee may file an application for compensation with the Industrial Accident Commission and in addition bring an action at law against such employer for damages. (Lab. Code, § 3706; *Goodman Bros.* v. *Superior Court* (1942) 51 Cal.App.2d 297, 299 [124 P.2d 644].) ■ The right of the injured employee to bring an action at law for damages may be exercised independently of any proceeding before the Industrial Accident Commission. (*Chakmakjian* v. *Lowe* (1949) 33 Cal.2d 308, 310 [201 P.2d 801].) Nor does the fact that the plaintiff in any such action has received payment of an award made in his favor by the Industrial Accident Commission deprive the court of jurisdiction of such action. (*Hicks* v. *Ocean Shore Railroad, Inc.* (1941) 18 Cal.2d 773, 787 [117 P.2d 850].)

Where the injured employee brings such action at law "[I]t is presumed that the injury to the employee was a direct result and grew out of the negligence of the employer, and the burden of proof is upon the employer, to rebut the presumption of negligence. It is not a defense to the employer that the employee was guilty of contributory negligence, or assumed the risk of the hazard complained of, or that the injury was caused by the negligence of a fellow servant." (Lab. Code, § 3708.) ■ Whether in any given case such presumption of the defendant's negligence has been controverted and overcome is a question to be determined by the trier of the fact. (*Chakmakjian* v. *Lowe* (1949), *supra,* 33 Cal.2d 308, 313; *Peters* v. *California Building-Loan Assn.* (1931) 116 Cal.App. 143, 149-150 [2 P.2d 439].) ■ The above statutory presumption of the negligence of the employer is evidence. It remains in the case to be weighed with conflicting evidence and may support a finding in the face of contradictory evidence. (*Goss* v. *Fanoe* (1952) 114 Cal. App.2d 819, 825 [251 P.2d 337]; *Grady* v. *Canfield* (1935) 9 Cal.App.2d 341, 342 [49 P.2d 902].) ■ It may be overcome, if there is substantial evidence to rebut it. (See e.g., *Still* v. *Pearson* (1950) 96 Cal.App.2d 315, 323 [215 P.2d 87].)

Our task then is to determine whether there is any sub-

stantial evidence to support the trial court's findings that the defendants were not negligent and that the plaintiff suffered no damages as a proximate result of any negligence on their part, and to uphold the conclusion of law that the defendants sustained the burden of overcoming the presumption of their negligence.

It is essential for any such determination that we define the pertinent duties owed by the defendants, as employers, to the plaintiff, as their employee. ■ First, a statement of the general principle: "Except under the Workmen's Compensation Act, an employer is not liable for injuries to his employees arising in the course of their employment, unless some fault or negligence on his part proximately caused the injury. The employer's obligation is simply to use reasonable care—that degree of care that a man of ordinary prudence in the same line of business would be expected to exercise to secure his own safety were he doing the work." (32 Cal. Jur.2d, Master and Servant, § 86, p. 505.) ■ An employer, therefore, must exercise ordinary and reasonable care to provide safe tools, machinery and appliances. (*Perry* v. *Angelus Hospital Assn.* (1916) 172 Cal. 311, 313-314 [156 P. 449]; *Robinet* v. *Hawks* (1927) 200 Cal. 265, 271-273 [252 P. 1045].) "He is not required to furnish appliances which are absolutely safe, nor is he bound to furnish the best that can possibly be obtained. He is, however, under obligation to exercise reasonable and ordinary diligence in their selection, and to furnish to his servant such as are reasonably safe and adapted to perform the work for which they are designed, and which, with ordinary care and prudence on the part of the servant, render it reasonably probable that they can be used by him in the ordinary exercise of his employment without danger to himself." (*Sappenfield* v. *Main St. etc. R. R. Co.*, 91 Cal. 48, 56 [27 P. 590].) ■■ Where it is claimed that the employer negligently provided defective tools, machinery or appliances, it must appear that he had knowledge of the defect, or that he could have discovered the defect by the exercise of reasonable care. (*Perry* v. *Angelus Hospital Assn., supra.*) His duty is of a continuing nature, requiring reasonably careful inspection at reasonable intervals (see generally: *Tellez* v. *Schreyer* (1958) 158 Cal.App.2d 248, 249-250 [322 P.2d 259]; 32 Cal.Jur.2d, Master and Servant, §§ 90, 92, 93, at pp. 510-512, 514-517; Prosser, Torts, § 67, at pp. 375-376 (2d ed. 1955); *Dyas* v. *Southern Pacific Co.* (1903) 140 Cal. 296, 308-309 [73 P. 972].), and the mainte-

nance of such tools and machinery in suitable condition. (*Sappenfield* v. *Main St. etc. R. R. Co., supra,* 91 Cal. 48.)

We consider the relevant evidence. It is clear from the testimony of both parties that the belt was jumping off the pulley on the day in question. According to the plaintiff, it jumped off six times; according to Crabtree about five times. According to Randolph, the foreman, he had no trouble with the hoist; he stated that he did not see the belt jump off. It is also clear that the hoist was being operated with loads well within its capacity. Indeed, we find no claim made by plaintiff that he was injured because of any negligence in overloading the hoist. The evidence is also uncontradicted that the hoist was bought new about a week before the accident and had been used on one other job on the previous Saturday. On that occasion, according to the defendant Burton, he had no trouble with the belt jumping off. Cluff, his codefendant, was not then present. From the foregoing evidence, the trial judge may well have inferred that the defendants had used ordinary and reasonable care in originally acquiring and providing the machine for its employees, that at least up until the day of the accident they had no knowledge of any defect and that they could not have discovered any defect by the exercise of reasonable care. Since the hoist was only a week old, the court below could have inferred that no inspection for hidden defects was required.

The court may also have well believed that as of the day of the accident the defendants had no knowledge of any defective condition or of any facts leading to the discovery of such a condition. As we have stated above, Burton had no trouble with the hoist on the preceding Saturday; Cluff was not then present. Cluff had never seen the machine running prior to the day of the accident; Burton was not present on that day. Their foreman denied having any trouble with the machine and thus disclaimed any facts which might constitute the basis of imputed knowledge to his employers. The only fact brought to Cluff's attention was the jumping of the belt from the pulley, which occurred just a very short time before plaintiff injured his finger. The court may well have believed that this single incident, so shortly before the accident, did not in any way affect or weaken the inference that the defendants had at all times used ordinary care.

The evidence is fatal to plaintiff's claim on a more vital point. Even if we were to assume, notwithstanding the trial court's finding to the contrary, that the jumping of the belt

from the pulley was a defect chargeable to defendants' negligence, the evidence supports the finding that the injury to the plaintiff's finger was not proximately caused by the jumping of the belt from the pulley. We fail to find any evidence in the record that the plaintiff was injured by the belt. On oral argument, counsel for appellant, with commendable candor conceded this. The evidence shows that without shutting off the engine, although he had been warned to do so on the previous incident just a short time before, plaintiff thrust his hand into the machine and behind the guard, and, in attempting to replace the belt on the pulley, in some way injured his finger. Assuming *arguendo* that the defendants did negligently furnish a hoist with a defective belt, nevertheless the above evidence would still support a finding that the plaintiff's injury was not proximately caused by any such defect and, apart from any consideration that plaintiff's conduct constituted contributory negligence or an assumption of risk (defenses not permitted by the applicable statute), that such injury was entirely independent of any negligence of defendants.

We feel therefore that there is substantial evidence to support the trial court's findings that the defendants were not negligent and that the plaintiff suffered no damages as a proximate result of any negligence on their part. Such ample and substantial evidence and the reasonable inferences therefrom warranted the court's conclusion that the statutory presumption of the defendants' negligence had been overcome.

Plaintiff also urges upon us that the decision of the Industrial Accident Commission is res judicata on the issue of whether the plaintiff sustained an injury arising out of and occurring in the course of his employment. Whether this is true or not is of no avail to plaintiff. The trial court found that plaintiff as an employee of defendants had sustained the injuries complained of but also found there was sufficient evidence to rebut any negligence of defendants in connection with the injury.

Plaintiff's next contention on appeal, to the effect that the trial court misconceived the issues, is based on two colloquies between court and counsel. The first occurred at the conclusion of the direct examination of plaintiff on his case in chief, and when he was recalled to the stand, after plaintiff's medical witness testified out of order. On such recall, and before any questions were asked, the following colloquy ensued: ''THE COURT: Just a minute. Now Counsel, you

didn't go into the accident facts, particularly with regard to the accident, what he was doing at the time this thing happened? MR. CAMPBELL: I didn't intend to, Your Honor. THE COURT: Didn't intend to. All right." Thereupon cross-examination began. We fail to see how this shows the court's misconception of the issues. On the contrary, it shows the court's careful inquiry as to whether plaintiff's counsel, upon completion of the direct examination, was going to introduce detailed evidence of the accident or was merely going to rely on the statutory presumption.

The second incident complained of occurred after plaintiff had been recalled in rebuttal and was being questioned by his own counsel on direct examination: "Q. Now, in operating the hoist, when you would push that left handle forward, which I understand pushed down on the belt, what, if anything, did that have to do with the belt coming off? MR. TIDBALL: Wait a minute. This calls for a conclusion. THE COURT: That's right. It is not proper rebuttal. The purpose of rebuttal is to contradict the testimony of some other person or some fact. Now, he is to rebut the testimony of what other witnesses said. MR. CAMPBELL: This testimony directly rebuts the testimony of Randolph that they were having no trouble with the motor, that the belt did not come off. THE COURT: He testified that it came off six times during the day and he saw no one else put it on. *Then you are going into the operation of the machine. We are not particularly interested in that.* We want to——."

Appellant particularly complains of the remarks in italics and argues it "indicates that the Court was looking for evidence of negligence apart from the operation of the hoist. . . ." The argument has no merit. It is apparent from the entire record that the court correctly considered that the alleged negligence of the defendants in providing a defective hoist to be the crucial issue in the case. The evidence was directed to this issue. There was no claim and no evidence that the plaintiff's injuries were caused by the way in which the machine was being operated. It was in this respect, that the court stated it was not interested in the operation of the hoist. Contrary to plaintiff's argument, this shows a clear conception of the issue of negligence.

Plaintiff's final contention revolves about a discussion between the court and plaintiff's counsel at the end of the trial on the matter of viewing the hoist. The court stated it would be glad to go out to a certain place of business and

inspect defendants' hoist. Plaintiff's counsel insisted that he would want to accompany the judge, and when told that it was not necessary, objected to the judge viewing the hoist without him. As a result the trial judge did not inspect it. Plaintiff claims that this constitutes prejudicial error but furnishes us with no supporting authorities.

 The claim is well established that a trial judge, in a nonjury case, may inspect the *locus in quo* with or without the consent of counsel, for the purpose of understanding the evidence introduced. (*Noble* v. *Kertz & Sons Feed & Fuel Co.* (1945) 72 Cal.App.2d 153 [164 P.2d 257].) Where the view is taken with consent of counsel, what is then seen is itself evidence and may be used alone or with other evidence to support the findings. (*Noble* v. *Kertz & Sons Feed & Fuel Co., supra; McCarthy* v. *City of Manhattan Beach* (1953) 41 Cal.2d 879, 889 [264 P.2d 932].) Where the view is without the consent or presence of counsel, it is error for the trial judge to use his observations as independent evidence. (*Noble* v. *Kertz & Sons Feed & Fuel Co., supra.*)

 What appellant completely overlooks, however, is that whether the trial court takes a view at all, with or without consent, is a matter entirely within its own discretion. (*Urton* v. *Ousdal* (1927) 84 Cal.App. 211, 213 [257 P. 584].)

The trial court could have viewed the hoist with or without the consent of counsel and subject to the rules above stated. Instead, it finally declined to view the hoist because of counsel's objections. This was entirely within its discretion and we find no abuse of such discretion.

In view of our above conclusions, it is unnecessary for us to consider the two additional matters raised by respondents in their brief.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.