[No. B164873. Second Dist., Div. Seven. July 25, 2003.]

LE PARC COMMUNITY ASSOCATION, Petitioner v.
WORKERS' COMPENSATION APPEALS BOARD, TIM CURREN et al.,
Respondents.

1162

COUNSEL

Graves, Roberson & Bourassa and Marshall W. Graves for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Finestone, Schumaker, Cocquyt & Ongania and David L. Pollak for Respondent Tim Curren.

John M. Rea, Steven A. McGinty and Stella Owens-Murrell for Respondent Director of Industrial Relations as Administrator of the Uninsured Employers Fund.

## OPINION

**PERLUSS, P. J.**—Le Parc Community Association (Le Parc) seeks review of the decision by the Workers' Compensation Appeals Board (Board) granting Tim Curren's petition for reconsideration, rescinding the workers' compensation administrative law judge's order dismissing Curren's workers' compensation case against Le Parc and returning the matter to the hearing level for further proceedings.

The essential issue presented is whether Curren's dismissal with prejudice of his superior court action for negligence against Le Parc, pursuant to the terms of a settlement agreement that was not submitted to the Board for approval, precludes further prosecution of his claim against Le Parc in the workers' compensation forum. ▮ We hold that a civil action for negligence by an injured employee against an illegally uninsured employer pursuant to Labor Code section 3706,[1] as a matter of law, is not based on the same cause of action as an application for compensation filed with the Board pursuant to sections 3600 and 3715 and that principles of res judicata and collateral estoppel do not bar Curren's pursuit of his workers' compensation remedy. Accordingly, we affirm the Board's order.

### FACTUAL AND PROCEDURAL BACKGROUND

Isaac Martinez, doing business as Advance Property Maintenance (Martinez) was retained by Le Parc to perform roof repairs, tree trimming and other maintenance activities at Le Parc's properties in Simi Valley. Curren, an employee of Martinez, was injured[2] by a fall from a roof while cleaning gutters at one of the Le Parc properties on August 23, 2000. Neither Martinez nor Le Parc maintained workers' compensation insurance. Although it is conceded that Martinez was not licensed as a general contractor, the parties dispute whether a contractor's license was required for the work performed by Martinez for Le Parc and whether Martinez (and derivatively Curren) was an independent contractor or an employee of Le Parc.

---

[1] All statutory references are to the Labor Code unless otherwise indicated.

[2] Curren has alleged that he sustained injury to his left foot, right patella, left arm and face (nose, teeth and jaw).

### 1. *The Application for Workers' Compensation Benefits*

Curren filed an application for workers' compensation benefits against Martinez and Le Parc and thereafter joined the Uninsured Employers Fund in the proceeding (§ 3710 et seq.).[3] Le Parc was named, pursuant to section 2750.5,[4] on the theory that it was presumed to be Curren's employer because Martinez was required to, but did not, have a contractor's license to perform the repair and maintenance services for which he had been retained and was illegally uninsured for workers' compensation. (See, e.g., *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 13 [219 Cal.Rptr. 13, 706 P.2d 1146] [unlicensed contractor injured during remodel is employee of homeowner under § 2750.5]; *Rinaldi v. Workers' Comp. Appeals Bd.* (1987) 196 Cal.App.3d 571 [242 Cal.Rptr. 895] [unlicensed subcontractor and subcontractor's injured employee are employees of licensed general contractor].) Le Parc has denied it was Curren's employer.

### 2. *The Personal Injury Action*

Curren also filed (through separate counsel) a civil lawsuit against Martinez and Le Parc in Ventura County Superior Court pursuant to section 3706, which authorizes an injured employee to file an action at law against an uninsured employer: "If any employer fails to secure the payment of compensation, any injured employee or his [or her] dependents may bring an action against such employer for damages, as if this division did not apply." The complaint, filed August 10, 2001, alleged a single cause of action for negligence and personal injury. In the complaint Curren alleged that Martinez and Le Parc were presumed negligent under section 3708[5] and, in addition, that Martinez and Le Parc were negligent by virtue of their directions to Curren to perform the roof work in an unsafe and dangerous manner, their failure to provide safety equipment and training and their failure to provide safe working conditions.

On July 16, 2002 Curren and Le Parc, as well as Le Parc's general liability insurance carrier, settled the civil action. In return for payment of $20,000,

---

[3] Curren also alleged that Martinez had been hired by Le Parc through Wood Ranch Property Management (Wood Ranch). Wood Ranch and its workers' compensation carrier, State Compensation Insurance Fund, were subsequently joined as defendants in the workers' compensation proceeding.

[4] Section 2750.5 provides, "There is a rebuttable presumption affecting the burden of proof that a worker performing services for which a license is required pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code, or who is performing such services for a person who is required to obtain such a license is an employee rather than an independent contractor."

[5] Section 3708 provides, in part, "In such an action [under section 3706] it is presumed that the injury to the employee was a direct result and grew out of the negligence of the employer, and the burden of proof is upon the employer, to rebut the presumption of negligence...."

Curren and his counsel signed a document entitled "Settlement Agreement & Release of All Claims," which released Le Parc from all claims in any way related to the injuries Curren suffered on August 23, 2000. In addition to releasing Le Parc, Curren agreed to indemnify Le Parc and hold it harmless against any action, claim or demand by Curren himself or by any other person for damages or compensation resulting in any way from the August 23, 2000 incident. The indemnity provision specifically stated, "[t]his includes, but is not limited [to], any subrogation actions, claims or demands from any employer or workers' compensation insurance carrier or agency, including, but not limited to, Isaac Martinez, Wood Ranch Management Co., the Uninsured Employers Fund and/or the State Compensation Insurance Fund."

Pursuant to the terms of the settlement agreement, Curren filed a request for dismissal with prejudice in the Ventura County Superior Court action on July 29, 2002. The dismissal was entered on August 7, 2002.

### 3. *Le Parc's Motion to Dismiss the Workers' Compensation Case*

On September 25, 2002 Le Parc moved to dismiss Curren's workers' compensation claim on the ground the settlement agreement resolved all of Curren's claims against Le Parc, including the application for workers' compensation benefits. In response, Curren argued it had not been his intent to release his workers' compensation rights and that the motion to dismiss should be denied or a hearing held to determine the true intent of the parties. The workers' compensation administrative law judge granted the motion without a hearing and without opinion, ordering the case dismissed "without prejudice, with jurisdiction reserved nevertheless with respect to lien claims on file as of the date hereof [October 18, 2002]."

### 4. *Curren's Petition for Reconsideration and the Board's Decision*

Curren filed a petition for reconsideration with the Board, arguing that the settlement agreement and release of claims did not bar the continued prosecution of his application for workers' compensation because the agreement had not been approved by the Board, as required by section 5001.[6] In addition, Curren contended his due process rights had been violated by the workers'

---

[6] Section 5001 provides, "No release of liability or compromise agreement is valid unless it is approved by the appeals board or referee." Curren also noted the settlement agreement did not comply with certain of the requirements of sections 5002 and 5003, which mandate, among other matters, that any compromise of a workers' compensation claim must be in a writing signed by both parties (Le Parc did not sign the agreement); specify the average weekly wages of the employee and the nature of his or her disability (facts omitted from the agreement); and be filed "forthwith" with the Board.

compensation administrative law judge's issuance of a decision without conducting a hearing regarding the parties' intent.

The workers' compensation administrative law judge filed a report on the petition for reconsideration, recommending the petition be denied. His report explained that the issue whether Le Parc was Curren's employer was an essential element of both the superior court action and the workers' compensation claim and asserted that Curren's voluntary dismissal with prejudice of the civil action "constitutes a retraxit and a determination on merits involving principles of res judicata and collateral estoppel, which bar the litigation of those issues in any other proceeding." Accordingly, the report concluded that under the holding of a similar case, *Ghanbar v. Workers' Comp. Appeals Bd.* (2002) 67 Cal.Comp.Cases 1499, Curren was barred from proving the fact of employment in the workers' compensation proceeding and, therefore, was not entitled to relief as a matter of law.

Following the filing of the report from the workers' compensation administrative law judge, Le Parc filed its own answer to the petition for rehearing. Le Parc now argued, "the applicant's position that the settlement cannot resolve a workers' compensation case without the Appeals Board approving a settlement is irrelevant. It is not the settlement itself which bars the applicant from proceeding against Le Parc as a claimed employer in the workers' compensation matter, it is the voluntary dismissal with prejudice. *Retraxit* means that any and all of the applicant's claims against the defendant, Le Parc, are merged and that that dismissal bars any further action against the defendant."

The Board granted Curren's petition for reconsideration and rescinded the order dismissing the action because it was "not persuaded that the dismissal with prejudice in the civil action bars litigation of applicant's workers' compensation claim." The Board noted that the parties in the two proceedings were not the same (several of the parties to the workers' compensation case were not named in the civil action) and found that the issues in the two proceedings were not identical. In particular, the Board held that the issue of employment was not an essential element in the civil action because common law negligence had been pleaded as an alternative theory of recovery. In addition, the Board stated the issue of employment was not "actually litigated and necessarily decided by the dismissal with prejudice." Finally, the Board noted that the settlement agreement had not be submitted to it for approval, as required by section 5001. The Board returned the matter to the trial level for further proceedings.

On Le Parc's petition, we issued a writ of review.

## CONTENTIONS

Le Parc contends that the dismissal of Curren's civil action operates as a retraxit and bars further litigation on the same subject matter between the parties and that Curren is collaterally estopped from establishing that Le Parc was his employer, an essential element of a claim for workers' compensation benefits.

## DISCUSSION

### 1. Standard of Review

■ An appellate court is not bound by the Board's conclusions on questions of law. (*Dimmig v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864–865 [101 Cal.Rptr. 105, 495 P.2d 433]; *Save Mart Stores v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.App.4th 720, 723 [4 Cal.Rptr.2d 597]; *Klee v. Workers' Comp. Appeals Bd.* (1989) 211 Cal.App.3d 1519, 1523 [260 Cal.Rptr. 217].) Because the issue in this case is the legal effect of the voluntary dismissal of a civil action filed pursuant to section 3706, we review the question de novo.

### 2. The Doctrine of Retraxit and Applicable Principles of Res Judicata and Collateral Estoppel

Le Parc concedes the settlement agreement upon which the dismissal of the civil action was based was not submitted to the Board for approval as required by section 5001 and at least implicitly acknowledges that, absent Board approval, the agreement itself cannot validly release or otherwise bar Curren's claim for workers' compensation benefits, regardless of the parties' intent. "A tort release is effective upon execution, but a workers' compensation release is invalid until approved by the workers' compensation judge. [Citations.] ... 'This inquiry by the [appeals board or] referee should carry out the legislative objective of "protecting workmen who might agree to unfortunate compromises because of economic pressure or lack of competent advice." [Citation.] These safeguards against improvident releases place a workmen's compensation release upon a higher plane than a private contractual release; it is a judgment, with "the same force and effect as an award made after a full hearing." ' [Citations.]" (*Sumner v. Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 965, 971 [191 Cal.Rptr. 811, 663 P.2d 534]; accord, *Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299, 304 [121

Cal.Rptr.2d 391, 48 P.3d 423] [§ 5001's requirement for Board approval protects the interest of employees by ensuring fairness in settlement agreements].)[7]

Nonetheless, Le Parc argues Curren's voluntary dismissal with prejudice of his civil action, independently of the settlement agreement, constitutes a retraxit that bars further litigation of the workers' compensation claim. As explained by Division One of our court, "In the common law, a retraxit was 'a voluntary renunciation by plaintiff in open court of his suit and cause thereof, and by it plaintiff forever loses his action.' [Citations.] In California, the same effect is now accomplished by a dismissal with prejudice. [Citations.]" (*Morris v. Blank* (2001) 94 Cal.App.4th 823, 828 [114 Cal.Rptr.2d 672].)

" ' "A retraxit has always been deemed a judgment on the merits against the plaintiff, estopping him from subsequently maintaining an action for the cause renounced." [Citation.]' [Citation.] A retraxit is equivalent to a judgment on the merits and as such bars further litigation on the same subject matter between the parties." (*Torrey Pines Bank v. Superior Court* (1989) 216 Cal.App.3d 813, 820 [265 Cal.Rptr. 217.) Accordingly, the determination whether Curren's dismissal of his civil action bars subsequent litigation of his workers' compensation claim must be analyzed under traditional principles of res judicata and collateral estoppel. (*Morris v. Blank, supra*, 94 CalApp.4th at p. 830 [following voluntary dismissal with prejudice, "the question is whether plaintiff's superior court action is barred by res judicata or collateral estoppel"]; *Rice v. Crow* (2000) 81 Cal.App.4th 725, 733–734 [97 Cal.Rptr.2d 110] ["a retraxit invokes the principles of res judicata"].)

### a. *Res Judicata*

■ Under the doctrine of res judicata, a valid, final judgment on the merits precludes parties or their privies from relitigating the same "cause of action" in a subsequent suit. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 [123 Cal.Rptr.2d 432, 51 P.3d 297] (*Mycogen*); *Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.... Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen*, at pp. 896–897, citation and fn. omitted.)

---

[7] To the extent there was any uncertainty or ambiguity as to the meaning of any provision of the settlement agreement (for example, with respect to the nature or scope of the indemnification provisions), the Board could decide whether extrinsic evidence should be presented.

■ California law defines a "cause of action" for purposes of the res judicata doctrine by analyzing the primary right at stake: "[A] 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] A pleading that states the violation of one primary right in two causes of action contravenes the rule against 'splitting' a cause of action. [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 [34 Cal.Rptr.2d 386, 881 P.2d 1083].) " '[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery. [Citations.]' " (*Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160 [17 Cal.Rptr.2d 639].) "On the other hand, different primary rights may be violated by the same wrongful conduct." (*Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 342 [29 Cal.Rptr.2d 314] (*Branson*).)

■ An important exception to the general rule of indivisibility of a primary right permits a second action on a different legal theory if the plaintiff was precluded from asserting that theory in the first action because of limitations on the subject matter jurisdiction of the first forum. (*Branson, supra,* 24 Cal.App.4th at p. 344; *Roberts v. Redlich* (1952) 111 Cal.App.2d 566, 570 [244 P.2d 933].) "When any of the following circumstances exists, the general rule [of res judicata] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: [¶] ... [¶] (c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief." (Rest.2d Judgments, § 26, subds. (1)(a) & (c).)

■ A further exception to general res judicata (and collateral estoppel) principles applies when the Legislature has specified exactly what preclusive effect a judicial determination has on a related administrative proceeding. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 851–852 [25 Cal.Rptr.2d 500, 863 P.2d 745] [traditional collateral estoppel principles did not govern where Legislature had specified in Vehicle Code exactly what preclusive effect criminal proceeding had on administrative license suspension for drunk driving]; see *Branson, supra,* 24 Cal.App.4th at p. 345.) If the administrative and civil provisions afford cumulative remedies that cannot all be sought in one proceeding, the statutory scheme plainly envisions that both an administrative

proceeding and a civil action may be brought; and res judicata does not apply. (*People v. Damon* (1996) 51 Cal.App.4th 958, 972 [59 Cal.Rptr.2d 504].)

  b.  *Collateral Estoppel*

■ "Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' [Citation.]" (*Mycogen, supra,* 28 Cal.4th at p. 896.) The doctrine applies only if the decision in the initial proceeding was final and on the merits and the issue sought to be precluded from relitigation is identical to that decided in the first action and was actually and necessarily litigated in that action. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223].) In addition, the party against whom preclusion is sought must be the same as, or in privity with, the party to the first action. (*Ibid.*) "Although a second action between the parties on a different cause of action is not barred by res judicata, nevertheless' … the first judgment "operates as an estoppel or conclusive adjudication as to such issues in the second action as were *actually litigated and determined in the first action.*" [Citations.]' [Citation.]" (*Branson, supra,* 24 Cal.App.4th at p. 346.)

3.  *Voluntary Dismissal with Prejudice of a Civil Action Filed Under Section 3706 Does Not Bar Continued Litigation of the Related Workers' Compensation Claim*

  a.  *A Workers' Compensation Claim and a Civil Action Under Section 3706 Do Not Involve the Same Primary Right*

The primary purpose of workers' compensation laws is to provide employees the certainty of medical benefits and compensation for work-related injuries by eliminating the need to prove negligence and abolishing the common law defenses of contributory negligence, assumption of the risk and fault of a fellow employee. (*Hisel v. County of Los Angeles* (1987) 193 Cal.App.3d 969, 974–975 [238 Cal.Rptr. 678].) In return, employers are immunized from liability in civil actions for damages. (*Jones v. Kaiser Industries Corp.* (1987) 43 Cal.3d 552, 562 [237 Cal.Rptr. 568, 737 P.2d 771] ["the workers' compensation system represents a balance between the advantage to the employer of immunity from liability at law and the advantage to the employee of swift and certain compensation"].)

"The right to workers' compensation benefits is wholly statutory and is not derived from common law. [Citation.]" (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) Under section 3602, subdivision (a) , the exclusive remedy of an injured employee against his or her employer for a work-related injury is, subject to certain

specified exceptions, the right to workers' compensation benefits. (*Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 984 [101 Cal.Rptr.2d 325]; *Rymer v. Hagler* (1989) 211 Cal.App.3d 1171, 1177 [260 Cal.Rptr. 76].) "The Workers' Compensation Act embraces a special forum governed by rules of procedure and evidence substantially different from that in the superior court, all of which should be, have been, and are liberally construed in favor of the worker's claim. [Citation.] The intention is to compensate the worker adequately and quickly in a specific forum provided therefor." (*Argonaut Ins. Co. v. Superior Court* (1985) 164 Cal.App.3d 320, 323 [210 Cal.Rptr. 417].)

In contrast, section 3706, which "is one of the principal exceptions to the Act's exclusive remedy rule," authorizes an injured employee to pursue ordinary tort claims in the superior court against an employer who does not carry insurance or has not otherwise secured the payment of compensation. (*Rymer v. Hagler, supra*, 211 Cal.App.3d at p. 1177; see *Huffman v. City of Poway, supra*, 84 Cal.App.4th at p. 987 [" '[t]he price that must be paid by each employer for immunity from tort liability is the purchase of a workers' compensation policy [and where the employer chooses] not to pay that price ... it should not be immune from liability.' [Citation.]"].)[8] If the injured employee can show there is no coverage, he or she is entitled to the full range of relief generally available in personal injury actions if the injury was the result of the employer's negligence.[9] (See, e.g., *Hicks v. Ocean Shore Railroad, Inc.* (1941) 18 Cal.2d 773, 779–780 [117 P.2d 850]; *Chakmakjian v. Lowe* (1950) 101 Cal.App.2d 329, 332–333 [225 P.2d 307].)

Although from a medical viewpoint Curren suffered only a single set of injuries as a result of his fall from the roof, his claims against Le Parc in the workers' compensation proceeding and superior court action asserted two distinct primary rights—the statutory right to prompt, certain compensation for all work-related injuries regardless of fault and the common law right to be free of his employer's negligence in maintaining his work environment. (*Chakmakjian v. Lowe, supra*, 101 Cal.App.2d at p. 332 ["The essential differences between an action in the courts for damages resulting from negligence, and the statutory proceeding to secure an award of compensation by the Industrial Accident Commission, are too well known to require discussion."]; see *Branson, supra*, 24 Cal.App.4th at pp. 343–344 [primary

---

[8] "Pursuant to the 'plenary power' the Constitution has granted to the Legislature 'to create, and enforce a complete system of workers' compensation' (Cal. Const., art. XIV, § 4), the Legislature has created a statutory scheme requiring all employers to secure the payment of workers' compensation to injured workers, either by obtaining insurance coverage of their liability or by obtaining a certificate of consent to self-insure issued by the Director of Industrial Relations. [Citation.]" (*DuBois v. Workers' Comp. Appeals Bd., supra*, 5 Cal.4th at p. 388.)

[9] Section 3708's presumption of employer negligence may be rebutted by the employer. (*Hall v. Burton* (1962) 201 Cal.App.2d 72, 79 [19 Cal.Rptr. 797].)

right to seek indemnity under Corp. Code § 317 is not same cause of action as one for breach of contract for indemnity or claim asserted under doctrine of equitable estoppel]; cf. *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954–955 [160 Cal.Rptr. 141, 603 P.2d 58] overruled on other grounds by *White v. Ultramar* (1999) 21 Cal.4th 563 [88 Cal.Rptr.2d 19, 981 P.2d 944] [distinct primary rights and separate causes of action exist for wrongful conduct that violated statutory right against discriminatory employment practices and also constituted defamation and intentional infliction of emotional distress].)

Similarly, Le Parc (assuming it is proved to be Curren's employer) had separate primary duties—to take reasonable steps to provide a safe workplace (its common law duty) and to pay compensation regardless of fault for work-related injuries pursuant to section 3600 (as well as "to secure the payment of compensation" as required by section 3700). Curren has alleged that Le Parc violated each of these distinct duties. (See *Crowley v. Katleman*, *supra*, 8 Cal.4th at p. 681 [a cause of action contains a single "primary right" of the plaintiff, a corresponding "primary duty" of the defendant and a wrongful act constituting a breach].)    ■    Because Curren's application for workers' compensation benefits thus involves a different primary right from that asserted in his personal injury action, the voluntary dismissal with prejudice of the section 3706 action does not bar continued litigation of the workers' compensation proceeding.

   b.    *The Legislature Expressly Authorized Cumulative Remedies for an Injured Employee Whose Employer Is Uninsured*

Sections 3706 and 3715 explicitly permit an injured employee to proceed against an uninsured employer in a workers' compensation proceeding *and* sue the employer in superior court for personal injury damages. "Any employee ... whose employer has failed to secure the payment of compensation as required by this division ... may, *in addition to proceeding* against his or her employer by civil action in the courts as provided in Section 3706, file his or her application with the appeals board for compensation and the appeals board shall hear and determine the application for compensation in like manner as in other claims ...." (§ 3715, subd. (a); *Aetna Casualty & Surety Co. v. Aceves* (1991) 233 Cal.App.3d 544, 558–559 [284 Cal.Rptr. 477].)[10] Double recovery is prevented by section 3709, which provides, "[i]f,

---

[10] Prior to 1971, as today, the superior court action and workers' compensation proceedings were cumulative: The injured employee could sue his or her employer under section 3706, pursue an ordinary proceeding to collect workers' compensation benefits or conduct the two proceedings concurrently. (See *Chakmakjian v. Lowe*, *supra*, 101 Cal.App.2d at pp. 332–333 ["by becoming an 'uninsured' employer, appellant became subject to both remedies"].) Following 1971 amendments to the Labor Code, however, the employee could not pursue both proceedings to completion; at some point an election of remedies was required. (*Felix v.*

as a result of such action for damages, a judgment is obtained against the employer, any compensation awarded, paid, or secured by the employer shall be credited against the judgment."[11]

The Legislature has thus established a statutory scheme that authorizes proceedings in different tribunals affording different remedies that are intended to be cumulative. Indeed, these different forms of relief cannot be sought in a single proceeding: The superior court lacks jurisdiction to entertain Curren's basic claim for benefits under the workers' compensation laws; tort damages are not available in a workers' compensation proceeding.

In light of the Legislature's express intent to permit cumulative recoveries, resolution of the first proceeding, whether by dismissal with prejudice or any other form of judgment on the merits, cannot be given res judicata effect that bars continued litigation of the second action. (See *Gikas v. Zolin, supra,* 6 Cal.4th at pp. 851–852 [general res judicata principles do not apply when Legislature has specified preclusive effect judicial determination will have on related administrative proceeding]; *Branson, supra,* 24 Cal.App.4th at pp. 344–345.) The contrary position asserted by the workers' compensation administrative law judge and adopted by Le Parc would, in effect, make the remedies mutually exclusive, in direct conflict with the statutory command that they be cumulative.

### c. *Curren Is Not Foreclosed by the Doctrine of Collateral Estoppel from Establishing that Le Parc Was His Employer*

The issue of Martinez's status as an independent contractor or employee of Le Parc, and therefore whether Le Parc was Curren's employer, was not actually litigated in the dismissed civil action. Indeed, because that case was voluntarily dismissed prior to trial pursuant to the parties' settlement agreement, nothing was "actually litigated" or "necessarily decided" in that action, even though the dismissal with prejudice is "on the merits." Regardless of whether the fact of employment was an essential issue in Curren's section 3706 cause of action for negligence or whether the issue as framed in the

---

*Workmen's Comp. Appeals Bd.* (1974) 41 Cal.App.3d 759, 763 [116 Cal.Rptr. 345]; *Jenkins v. Workmen's Comp. Appeals Bd.* (1973) 31 Cal.App.3d 259, 262–263 [107 Cal.Rptr. 130].) In 1980 the Legislature again amended section 3715 and once more made the two remedies cumulative. (Stats. 1980, ch. 1091, § 4, p. 3503 [substituting "in addition to proceeding" for "in lieu of proceeding" in portion of § 3715, subd. (a), quoted and italicized in the text above].)

[11] Section 3709 also provides that the court shall allow as a first lien against any judgment in the section 3706 action the amount of compensation paid to the injured employee by the Uninsured Employers Fund.

civil action was identical to the employment issue in the workers' compensation proceeding, Curren is not precluded by collateral estoppel from establishing Le Parc was his employer as part of his claim for workers' compensation benefits. (*Lucido v. Superior Court, supra*, 51 Cal.3d at p. 341; *Branson, supra*, 24 Cal.App.4th at pp. 347–348.)

## DISPOSITION

The Board's order granting reconsideration, rescinding the workers' compensation administrative law judge's order and returning the matter to the hearing level for further proceedings is affirmed.

Johnson, J., and Woods, J., concurred.

Petitioner's petition for review by the Supreme Court was denied October 22, 2003. Baxter, J., did not participate therein.